Matthew M. Levy, J.
The plaintiff sues for false arrest and imprisonment and for malicious prosecution, and now moves on the pleadings and affidavits for summary judgment in his *217 favor, asking that an order be made striking the answer and setting the cause down for an assessment of damages (Rules Civ. Prac., rule 113). The following facts are submitted by him in the moving papers:
On May 19, 1958 the defendant Starks, while employed by the defendant New York City Transit Authority as a clerk in a change booth, was robbed at gunpoint of his employer’s money. The crime was perpetrated by two men in the Independent 110th Street subway station in Manhattan. The description given by Starks of one of the robbers, who shot at Starks, resulted in the arrest of Stearns, the plaintiff. The arrest was made on May 23, by one Piggott, a member of the police force of the defendant Transit Authority. Subsequent to the arrest, Starks again identified the plaintiff as one of the holdup men. On May 23, Starks swore out and caused to be filed in the Felony Court an affidavit charging the plaintiff with robbery, causing the plaintiff to be arrested and transported to Police Headquarters and Felony Court, where he was detained against his will. On May 24, arraignment was adjourned to May 28, and at the same time bail of $7,500 was fixed, which the plaintiff was unable to furnish. On May 28, the plaintiff was again arraigned, at which time the defendant Starks testified under oath, charging the plaintiff with the robbery and identifying the plaintiff as one of the two culprits. The plaintiff was held for the Grand Jury. Bail, fixed in the sum of $25,000, was not furnished, and the plaintiff’s incarceration was continued. While the plaintiff was in jail, the actual robbers were apprehended. Consequently, and on June 5, the Grand Jury dismissed the charges against the plaintiff, and he was thereupon released, after 12 days’ loss of liberty.
The defendants have denied malice and have interposed a first complete defense in justification, resting upon a claim of probable cause, and a second partial defense in mitigation based upon the allegations of the first defense. In support thereof, the defendants assert: The description given by the defendant Starks was accurate and in good faith. The actual arrest was made by Detective Piggott of the Transit Authority police, to whom Starks had given a description of that one of the two persons who held up Starks in the change booth and who wielded the gun and did the shooting. From the description given, the plaintiff was located and arrested by Piggott in good faith. Both the accused and the actual robber were of the same race and color, answered to the call of the same abbreviated first name, looked alike, and each had a noticeable limp. According to Piggott, the plaintiff and the actual robber, “ so far as a *218 description and identification was [sic] concerned, were practically identical.” When apprehended, the plaintiff presented no alibi. At the same time, he was arrested for 1 ‘ policy making ” (Penal Law, § 970), on which charge he was later convicted. Until the time that Starks saw the actual criminals, he sincerely believed that the plaintiff was one of the gunmen. As soon as Starks saw the actual robbers, after their arrest, he immediately corrected his error, and withdrew his identification of the plaintiff. The entire matter, say the defendants, resulted from an honest case of mistaken identity. The defendants point out that nowhere from the papers submitted does it appear that either Starks or Piggott acted with malice.
On these facts, the plaintiff contends that he is entitled to judgment without trial against the defendants Transit Authority and Starks. Piggott has not been sued. No brief was submitted by the plaintiff. The defendants cite subdivision 3 of section 177 of the Code of Criminal Procedure. While, as will be seen, that statute is applicable in some important aspects of the case, it does not give to both defendants the complete protection claimed for it. Although the case has not thus been analyzed by the respective parties, it seems to me that the facts presented on this submission pose some legal problems that must be resolved in this fashion: The defendant Transit Authority is liable to the plaintiff, if liable at all, on the principle of respondeat superior, for the acts either of the defendant Starks or of Detective Piggott, both of whom concededly proceeded in pursuance of their duties to their employer, the Transit Authority. In consequence, the acts of each, Starks and Piggott, must be separately studied — since each of these employees is in a separate status. The latter is a “ peace officer ” (Public Authorities Law, § 1204, subd. 16) and the defendant Starks is not — and each performed his responsibilities to his employer in different ways.
I shall first consider the matter of the liability of Piggott, the Transit Authority police officer who made the actual arrest. As to him — and therefore as to the derivative liability of the Transit Authority in that regard — the statute invoked by the defendants specifically applies. Indeed, subdivision 3 of section 177 of the Code of Criminal Procedure refers only to “ peace officers ”. It provides that an arrest by a peace officer without a warrant is legally justified “ [w]hen a felony has in fact been committed, and he [the peace officer] has reasonable cause for believing the person to be arrested to have committed it. ’ ’ The plaintiff concedes that a felony was in fact committed. His motion for summary judgment must rest, then, so far as *219 the arrest by Piggott is concerned, on the contention that there is no basis upon which it could be claimed that there was reasonable cause for Piggott’s believing that the plaintiff had committed the crime (Schultz v. Greenwood Cemetery, 190 N. Y. 276, 278; Agar v. Kelsey, 253 App. Div. 726). In my view, the plaintiff’s contention cannot, in the circumstances here, be sustained.
The arrest by a peace officer of a person for a felony, upon the positive identification of the victim of the felony, is a lawful arrest, even when made without a warrant (Bass v. State of New York, 196 Misc. 177, 179, 181; Saunders v. State of New York, 14 Misc 2d 881, 884; see, also, Application of Eisman, 34 State Dept. Rep. 365, 369). These opinions deal with the legality of an arrest made under section 177 of the Code of Criminal Procedure. They indicate that this statute is to be construed literally — that is, that a “ peace officer may, without a warrant, arrest a person, * * * [w]hen a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it.” It should be noted that, since the occurrence of the events giving rise to this suit, section 177 has been amended by the addition of a subdivision 4, effective September 1, 1958, exculpating a peace officer from liability for an arrest without a warrant “ [w]hen he has reasonable cause for believing that a felony has been committed, and that the person arrested has committed it, though it should afterward appear that no felony has been committed, or, if committed, that the person arrested did not commit it.” (Italics supplied.) In my view, the amendment (in respect of the last provision) is a codification rather than a modification of the common law.
I hold that the plaintiff has failed to show that Detective Piggott did not have reasonable cause for believing that it was the plaintiff who had committed the felony with which he was being charged.
Now, as to the acts of the defendant Starks. Clearly, section 177 does not apply, since this defendant is not a peace officer. We must therefore look elsewhere for legal support or lack of it, so far as the case as against this defendant is concerned. It is the law of this State that the mere furnishing of information to the police will not subject the informant to liability in an action for false arrest when an arrest of an innocent accused results from such information (Francis v. Taft Cleaners & Dyers, 281 App. Div. 893, motion for reargument and motion for leave to appeal denied 281 App. Div. 983, motion for leave to appeal denied 305 N. Y. 930; Mitchell v. O’Hara, 165 Misc. 630). *220 But if the arrest is false and actionable, a private person who affirmatively procures or instigates the arrest will be liable as a tortfeasor (Grinnell v. Weston, 95 App. Div. 454; Davern v. Drew, 153 App. Div. 844, affd. sub nom. Davern v. Breen, 214 N. Y. 681). It is a question of fact whether Starks’ conduct can be said to have caused the arrest. His description of the person who had joined in the commission of the robbery preceded the arrest, but Starks did not seek out Stearns or request or demand that Stearns be arrested. Thus, neither Starks nor his employer may be held liable on that score on the present application. What of Starks’ subsequent acts of identification— out of and in court? ■ Having turned out to be erroneous, are these actionable ?
Insofar as Starks’ mistaken identification in court is concerned, his making and signing the complaint and his testimony during the preliminary hearings could, if the necessary ingredient of malice existed, give rise to a cause of action for malicious prosecution. However, since malice was absent, there is no basis for such a cause of action here (Schultz v. Greenwood Cemetery, 190 N. Y. 276, 278, supra).
As to Starks’ mistaken identification when the plaintiff was first apprehended — which resulted in the continuance of Ms detention — we must determine whether liability' ought be imposed upon Starks, or whether he should be exculpated without the aid of statute. Since the plaintiff Stearns is admittedly not guilty of the crime charged and since the defendant Starks was concededly honest in identifying Stearns as the perpetrator of the crime, both are entirely innocent of any wrong. WMch of two innocent persons should suffer for one’s error of identification? Here, there must, as I see it, be a delicate balancing of interests — both in respect of substantive law and of the judicial process.
As a matter of law, should not the actor be held liable for the wrong done him who was acted upon? Since, in our way of life, an innocent person has an unquestioned right to freedom from arrest, is he not, then, entitled to a judicial holding that, if arrested — albeit by error — he will be compensated for such arrest? I have come to the considered conclusion that the answer must be “ not necessarily ”. For life entails risks — and what has happened here is the result of one of them. It may or may not be that the citizen’s responsibility to aid in the apprehension of a felon should reach the point of being a legal duty (cf. Van Voorhis, J., at p. 81, and Conway, Ch. J., at p. 92, in Schuster v. City of New York, 5 N Y 2d 75). But, “ [i]n a democratic society which abhors the restrictions and super *221 vision of the ‘ police state ’, it will be recognized that public officers must rely heavily on the cooperation of the law-abiding members of the community, and although it is seldom that a premium is placed on information leading to the apprehension of offenders, such as rewards to informers, the common law has been solicitous lest undue penalties should be attached to those who thus seek to further the public welfare.” (1 Harper and James, Law of Torts, p. 301.)
And, as a matter of procedure, to permit the plaintiff to recover here by way of summary judgment would place an aggravatingly serious obstacle in the path of law enforcement. Citizens will become doubly hesitant about, and especially apprehensive of, identifying felons. For — however innocent the error, no matter how good the motive, notwithstanding how reasonable the cause — they might nevertheless be subject to judgment for damages without a trial if it should turn out that the identification was wrong.
There is, in my view, no feigned issue here. (See eases cited in Thorp v. Pittsburgh Bicentennial Sports Assn., 22 Misc 2d 233.) Notwithstanding the recent extension of permissible areas in which applications for summary judgment will lie (Rules Civ. Prac., rule 113, eff. March 1, 1959), this case is, I think, peculiarly the kind of a case that does not lend itself to satisfactory summary determination on the basis of affidavit proof alone. I should, were I the trier of the facts, want to see and observe the witnesses, hear all the evidence, note the circumstances of the commission of the crime, measure the accuser’s opportunity for adequate and positive identification, see for myself the similarity of physiognomy, physique and personality of the two persons involved, the accused and the guilty. These are facts and nuances that cannot altogether be meaningfully gleaned from the affidavits. Only after trial can it be truly said that there was or was not reasonable cause on the part of the defendant Starks for believing that the plaintiff was the felon.
The plaintiff’s motion for summary judgment and assessment of damages is denied.